IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **EDWARD HUGLER**, Acting Secretary of Labor,[1] United States Department of Labor, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 16 C 4825 <br>) |
| **SHIRLEY T. SHERROD**, et al., | )<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Acting Secretary of Labor Edward Hugler (the "Secretary"), as named representative for the Department of Labor (the "Department"), pursues this action under the civil enforcement provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (5),[2] to enjoin alleged acts and practices that violate the provisions of ERISA's Title I and to obtain relief for breaches of fiduciary duty under Section 1109 and further equitable relief as may be appropriate (Complaint ¶ 1). Defendants Shirley Sherrod ("Sherrod"), Leroy Johnson ("Johnson"), Shirley T. Sherrod, M.D., P.C. ("Sherrod PC") and Target Benefit Pension Plan (the "Plan") have responded by joining in a motion for leave to file amended

---

[1] This action was filed by then United States Secretary of Labor Thomas E. Perez, who has since been replaced by Acting Secretary Edward Hugler. Pursuant to Fed. R. Civ. P. ("Rule") 25(d), which provides for the automatic substitution of parties when the original party is a public officer who ceases to hold office while an action is pending, this Court has caused the Clerk's Office to replace Secretary Perez with Acting Secretary Hugler as the named representative for the Department.

[2] Future references to "29 U.S.C. § --" will take the form "Section --," omitting the prefatory "29 U.S.C."

answers and affirmative defenses under Rule 15(a)(2), including an affirmative defense that challenges the Secretary's allegations based on (1) Sherrod's use of Plan funds to post bond in a court case and (2) her then improperly accounting for those funds (Section 1113). In turn the Secretary has filed an objection to that aspect of Defendants' Motion for Leave To Amend. For reasons explained in this memorandum opinion and order, defendants' motion to add the affirmative defense referred to earlier in this opening paragraph is denied because that proposed defense is untimely advanced.

**Background**

Sherrod PC established the Plan in 1987 to provide retirement benefits to the participants, who were Sherrod PC employees (Complaint ¶ 2). Sherrod has been the named trustee of the Plan since January 1987, and she is a Plan fiduciary within the meaning of Section 1002(21)(A) (id. ¶ 7). Sherrod was the Plan administrator until May 30, 2012, at which time she appointed Leroy Johnson to be the administrator (id. ¶ 14). Johnson was the Plan Administrator at least during the period from May 30, 2012 to August 4, 2014 (Answer ¶ 8).

Sherrod PC terminated all its employees on or before December 31, 2008 (Complaint ¶ 11). At that time there were 19 former employee Plan participants -- ten with balances under $5,000 and nine with balances over that amount (Answer ¶ 11). Plan documents require that participants with account balances less than $5,000 at the time of termination receive distributions as soon as administratively feasible (Complaint ¶ 12). For those with balances over $5,000, the Secretary contends that the Plan requires that they be presented with the option for an elective distribution after their termination (id.).

According to the Secretary, Sherrod processed her own request for a Plan distribution and withdrew $253,114 from the Plan on or about November 10, 2011 (id. ¶ 16), but defendants deny

that allegation (Answer ¶ 16).[3] Since at least May 30, 2012 no participants have received distributions from the Plan except for Sherrod (Complaint ¶ 15).

In 2008 Sherrod became the subject of a state court action in Michigan, which in 2011 resulted in a judgment against her and an order to freeze Sherrod's assets, including the Plan (S. Mem. 2-3).[4] Sherrod sought to appeal that judgment, but the Michigan appellate court required her to post a $250,000 bond to do so (D. Mem. 1). To enable her to post the bond, Sherrod and Johnson then "took steps to unfreeze [Sherrod's] Plan account, including seeking a reversal of the state court's order" (id.). And in 2012 Sherrod and Johnson also brought an action in this District Court against Merrill Lynch, the custodian that held the Plan assets, under the contention that the custodian's refusal to release the funds pursuant to the state court order violated the federal Section 1056(d) directive that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated" (D. Mem. 1, 2 n.1).[5]

---

[3] On the other hand, defendants' proposed affirmative defense relies on the notion that the Secretary had actual knowledge as early as 2012 that Sherrod used the $253,114 to post bond, an assertion that causes this Court to call into question defendants' basis for denying the allegation in the first place.

[4] References to the parties' memoranda will take the following forms: for the Secretary's Memorandum in Opposition to Defendants' Motion To Amend Answer, "S. Mem. --," for Defendants' Memorandum in Support of Motion for Leave To File Their Amended Answer and Affirmative Defenses, "D. Mem. --" and for Defendants' Reply Memorandum, "D. Reply --."

[5] This Court's colleague, Honorable John Darrah, dismissed the Johnson and Sherrod case against Merrill Lynch for lack of subject matter jurisdiction because (1) the injury in question was not traceable to named defendant Merrill Lynch, which had sided with Sherrod and Johnson in opposing the state court's order to freeze the Plan, and (2) in light of Sherrod's and Johnson's appeal from the state court's freeze order to the Michigan appellate court, the Rooker-Feldman doctrine barred any litigations seeking the same relief in federal court (Johnson v. Merrill Lynch, Pierce, Fenner, & Smith, 12 C 2545, 2012 WL 5989345, at * 4 (N.D. Ill. Nov. 28, 2012), aff'd 719 F.3d 601, 605 (7th Cir. 2013)).

On November 10, 2011 Sherrod signed an affidavit and sent it to Merrill Lynch directing that $250,000 be paid directly to post the bond, with another $3,000 going directly to a surety agency to file the bond (S. Mem. 3). Merrill Lynch then released from the Plan only the funds needed to post the $250,000 bond in reliance on Sherrod's representations that the money released was allocated to her account and that her assets contained sufficient funds (S. Mem. Ex. 5 at 2). Sherrod did not post the bond in the name of the Plan (S. Mem. 3).

Based on those facts, the Secretary alleges that defendants violated ERISA by misallocating the $253,000 that was withdrawn from the Plan as "losses" to all participants, and by failing to correct their misallocation (S. Mem. 4). In addition to the dispute about the $253,114 distribution,[6] the Secretary's complaint lists a series of unaccounted-for withdrawals and misallocations by defendants, and it claims (1) that from January 1, 2015 to the present Sherrod has continued to withdraw funds from the Plan and (2) that she and Johnson continually fail to account for those distributions properly (Complaint ¶ ¶ 17, 20, 21-25).

## **Legal Standards**

Rule 15(a)(2) instructs that with regard to motions to amend a party's pleadings "[t]he court should freely give leave when justice so requires." But such cases as <u>Indiana Funeral Directors Ins. Trust v. Trustmark Ins. Corp.</u>, 347 F.3d 652, 655 (7th Cir. 2003) stand for the related corollary that "[u]nder Rule 15, courts may deny an amendment for undue delay, bad faith, dilatory motive, prejudice, or futility." Failure to assert a defense when the facts on which it is based were well known to a defendant at the time of the initial pleading may be a ground on

---

[6] Neither side has accounted for the $114 difference between what is listed in the Complaint as a withdrawal of $253,114 from the Plan on or about November 2011 and the $253,000 discussed in the Secretary's Memorandum.

which a motion to amend may be denied as untimely (see, e.g., Cont'l Bank, N.A. v. Meyer, 10 F.3d 1293, 1298 (7th Cir. 1993)).

## Untimeliness and Lack of Evidentiary Support

Defendants now seek leave to inject into the case a statute of limitations defense to allegations stemming from Complaint ¶¶ 16 to 18. That calls for consideration of Section 1113, which reads in relevant part:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of --
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.

As defendants would have it, the Department had actual knowledge as early as 2012 that in 2011 Sherrod used her $253,000 withdrawal to post bond for her state court appeal. So they claim that the statute of limitations bars the Complaint ¶¶ 16 to 18 allegations (1) that Sherrod withdrew the $253,114 from the Plan and accounted for it incorrectly and (2) that her actions caused all the other participants' vested benefits to be decreased (D. Mem. Ex. B ¶ 19). But analysis clearly shows that neither of Section 1113's alternatives bars the Secretary's ERISA claims.

Defendants attempt to support their proposed amendment with two newly-filed submissions. First they tender a fax from the Plan's then lawyer Edwin Conger to the Department dated December 20, 2012, notifying the Department that Johnson had succeeded Sherrod as Plan administrator (D. Mem. Ex. C):

> Pursuant to our conversation I am transmitting a copy of the appointment dated May 30, 2012 of Leroy Johnson as successor Plan administrator of the Shirley T Sherrod MD PC Target Pension Plan and Trust.

That fax also referred to the Sherrod and Johnson federal case briefly and tangentially:

> For your further information a Notice of Appeal was filed yesterday from the orders entered November 28, 2012 in the District Court in Chicago in Case No. 12 C 2545. I am transmitting a copy of this notice as well.

According to defendants the fax should have alerted the Secretary that Sherrod had posted the bond with Plan assets (D. Mem. 2 n.1) (apparently the docket in the federal case made documents publicly available that showed Sherrod used Plan assets to pay her state court bond (id.)).

Second, defendants submit an earlier email from Sherrod to the Department (dated August 10, 2012) inquiring about alienation of Plan assets by the state court (D. Mem. Ex. E). Attached to that email is a demand letter dated February 14 of that year from Sherrod's lawyers to Merrill Lynch insisting that it ignore the state court's order to freeze the Plan assets. In that letter Sherrod's lawyers said in part:

> Merrill Lynch has refused to follow the directions from the Plan Administrator, except once where Merrill Lynch forced Ms. Sherrod to sign an affidavit stating the funds would be used to post a bond in a state court proceeding.

Defendants' contend that the Department, having received that letter on August 10, 2012 in the form of an email attachment, ought to have known that Sherrod used Plan assets to pay the bond in her state court appeal.

Defendants' effort to cobble together the brief references in those two cases as somehow triggering an obligation on the Secretary's part to engage in active outside research that could have turned up Sherrod's breach of her own fiduciary obligations -- thus starting a limitations clock that would relieve Sherrod of responsibility for the illegal actions that she herself had

taken -- is truly disingenuous. As stated earlier, a court may deny a party's motion to amend when a proposed amendment is based on information and documents about which the party knew when it filed its original pleading (Cont'l Bank, N.A., 10 F.3d at 1298) -- indeed, that case goes farther, extending responsibility to matters of which the party itself should have been aware. Here it is extraordinarily ironic for defendants to attempt to disclaim such responsibility by stating in their memorandum, not once but twice (D. Mem. at 2, 4), that the documents were "discovered in their own files" after they had submitted their Answer. This opinion will go on to look at the situation in that respect, first addressing the earlier Sherrod email and then the later Conger fax.

As for the first, it is certainly no excuse that Sherrod may have forgotten the email that she herself authored that contained the sidelong reference that her counsel now tries to stress -- much more tellingly, of course she had unquestionably not forgotten the far more directly relevant information: the knowledge that she had committed the act on which the Complaint is mounted. By sharp contrast, the notion that the brief statement in the letter attached to the email gave the Department "actual knowledge of the breach or violation" (the unambiguous language of Section 1113(2)) loads that figurative linguistic beast with more baggage than it can figuratively carry.

As for the fax, defendants claim that the death of Conger complicated their efforts to obtain the document (D. Reply 5). But even if it is assumed arguendo that defendants were unable, despite good faith efforts, to locate the document before filing their original Affirmative Defenses, that would not call for granting defendants' motion to amend. Once again it involves an impermissible stretch to characterize the fax as showing that the Department had actual knowledge that Sherrod withdrew funds from the Plan's general assets to pay her state court

bond -- after all, the fax was nothing more than a routine notification to the Department about a change in Plan administrator. It cannot fairly be said that a fax cover note that offhandedly mentions a federal case having nothing whatever to do with the type of wrongdoing alleged here could have imparted "actual knowledge" of such wrongdoing to the Secretary.

In brief, even on defendants' distorted reading of the Section 1113(2) "actual knowledge" requirement as discussed in the next paragraph of this opinion, they have really offered nothing to suggest that the Secretary had such suspicions as to Sherrod's improper use of Plan funds as would call for her to engage in an investigation of documents in Sherrod's federal case when the fax was transmitted in 2012. Moreover, the notion that the Secretary would otherwise randomly search a federal docket is patently absurd. Here defendants have not claimed that the Department actually undertook that improbable course -- thus they have made no credible assertion that the fax imparted to the Secretary "actual knowledge" that would bring the statute of limitations into play.

To be blunt on that score, defendants' strained arguments that the analysis to this point has already rejected are even more fundamentally flawed, for everything that defendants have put forth ignores the stringency of the concept of "actual knowledge" that must be met to cut the Section 1113 limitations period in half -- from six years in Section 1113(1) to three years in Section 1113(2). What defendants have sought to do in that regard is to apply the concept of "inquiry notice" embodied in such statutes as RICO with the far more demanding "actual knowledge" test under ERISA.

That conceptual contrast has been explained well by the Court of Appeals for the Third Circuit in <u>Cetel v. Kirwan Fin'l Group, Inc.</u>, 460 F.3d 494 (3rd Cir. 2006), where an explanation

and application of RICO's "inquiry notice" requirement (id. at 507-08) was followed by this exposition of ERISA's far stricter "actual notice" requirement (id. at 511):

> By its terms then, ERISA's statute of limitations provision offers a choice of periods, depending on "whether the plaintiff has actual knowledge of the breach. . . ." Kurz v. Phila. Elec. Co., 96 F.3d 1544, 1551 (3d Cir. 1996). In Gluck v. Unisys Corp., we established that:
>
>> Actual knowledge of a breach or violation requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists, which facts could include necessary opinions of experts, knowledge of a transactions's harmful consequences, or even actual harm.
>
> 960 F.2d 1168, 1178 (3d Cir.1992) (internal citations omitted). We have thus stated that for purposes of determining actual knowledge, it must be shown that "plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation." Montrose Med. Group Participating Savs. Plan v. Bulger, 243 F.3d 773, 787 (3d Cir. 2001) (citations omitted). In other words, where a claim is for breach of fiduciary duty, to be charged with actual knowledge "requires knowledge of all relevant facts at least sufficient to give the plaintiff knowledge that a fiduciary duty has been breached or ERISA provision violated." Gluck, 960 F.2d at 1178.

That plain-language conceptualization of the Section 1113(2) standard was acknowledged by the Cetel court as "[r]ecognizing that the § 1113 statute of limitations sets a 'high standard for barring claims against fiduciaries prior to the expiration of the six-year limitations' and the requirements must be interpreted 'stringently,' Montrose, 243 F.3d at 778."

Although the Third Circuit completed its treatment of the matter in Cetel by finding that the very different facts before it in that case met that more stringent standard, other courts too have given the ERISA statute its plain meaning and have accordingly rejected the efforts of parties such as defendants here to rewrite the statute, consequently rejecting limitations arguments such as those advanced here by defendants (see, e.g., Maher v. Strachan Shipping Co., 68 F.3d 951, 954-56 (5th Cir. 1995); Caputo v. Pfizer, Inc., 267 F.3d 181, 193-94 (2d Cir. 2001), first citing Maher and later expressly rejecting the "should have known" approach urged by

- 9 -

defendants here -- an impermissible "constructive knowledge" substitute for "actual knowledge"; and LaScala v. Scrufari, 479 F.3d 213, 220 n.1 (2d Cir. 2007), citing Caputo and following the same path to the same conclusion). It simply will not do for defendants -- or for this Court -- to play legislator and amend the ERISA statute by taking the quantum leap from a purported need to inquire further based on snippets of indirect references to the far more difficult "actual knowledge" test.

## Secretary's Contention as to Futility

Courts also may deny a motion to amend for futility, meaning that it has no legal basis to affect the litigation (see, e.g. Wilson v. Am. Trans Air, Inc., 874 F.2d 386, 392 (7th Cir. 1989). In that respect the Secretary seeks to invoke the recent Supreme Court decision on the application of Section 1113 in Tibble v. Edison Int'l, 135 S. Ct. 1823, 1829 (2015), which teaches (1) that fiduciaries have a continuing duty to monitor a plan's investments and (2) that if a violation is of a type that can still be cured, the last date of the violation has yet to occur. In that regard the Secretary claims that ever since defendants' misallocation of those funds as Plan "losses," they have been bound by their fiduciary duty as described in Section 1104 to correct the misallocation -- a duty on which they have failed to act to this day (S. Mem. 12). Hence the Secretary contends that defendants' violation is ongoing because they still have an opportunity to cure, a fact that assertedly torpedoes defendants' proposed limitations defense (S. Mem. 12).

But that attempted analogy to Tibble appears flawed, for the course of conduct alleged in this case -- discrete misallocations that have yet to be corrected by defendants -- does not parallel the breach of ongoing fiduciary duty at issue in that case. There the Supreme Court relied on the defendants' common law duty under trust law to "monitor trust investments and remove imprudent ones. This continuing duty exists separate and apart from the trustee's duty to

exercise prudence in selecting investments at the outset" (135 S. Ct. at 1838).  No such "continuing duty" is at issue here, where it is charged that defendants breached their duty to manage the Plan with the prudence required by Section 1104 when they misallocated Plan funds.

Under the Secretary's reading, ERISA's limitations clock would not begin to tick on any past wrongdoing that has yet to be corrected.  To apply that approach to any breach of fiduciary duty that has yet to be cured could well negate Section 1113 altogether.  This Court will not take that drastic step -- a declination that does not affect the result here in any event, for defendants' motion fails for the reasons explained earlier.

## Conclusion

Defendants' Motion for Leave To File Their Amended Answer and Affirmative Defenses [Dkt. No. 25] is denied.  This action is set for a status hearing at 9 a.m. April 3, 2017 to discuss the future course of proceeding with the litigation.[7]

_____
Milton I. Shadur
Senior United States District Judge

Date:  March 27, 2017

---

[7] No change is made in the previously set April 27 status hearing date, which has been scheduled to address another matter on which the parties have joined issue.