In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 22-2204 & 22-2205

JULIE A. SU, Acting Secretary of Labor,
United States Department of Labor,*

*Plaintiff-Appellee*,

v.

LEROY JOHNSON and
SHIRLEY T. SHERROD,

*Defendants-Appellants*.

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-04825 — **Andrea R. Wood**, *Judge*.

_____

ARGUED APRIL 19, 2023 — DECIDED MAY 10, 2023

_____

Before HAMILTON, BRENNAN, and KIRSCH, *Circuit Judges*.

HAMILTON, *Circuit Judge*. These appeals present questions about enforcement of fiduciary duties of loyalty and prudence

_____

* We have substituted the current Acting Secretary of Labor, United States Department of Labor, for her predecessor, sued in an official capacity. Fed. R. App. P. 43(c)(2)

Case: 1:16-cv-04825 Document #: 350 Filed: 05/10/23 Page 2 of 19 PageID #:4477
Case: 22-2205      Document: 54      Filed: 05/10/2023      Pages: 19

2                                                    Nos. 22-2204 & 22-2205

under the Employee Retirement Income Security Act of 1974, better known as ERISA, 29 U.S.C. § 1001 et seq., as well as fiduciaries' duties to comply with plan documents. Defendants Shirley T. Sherrod and Leroy Johnson were fiduciaries of a retirement plan that Sherrod had set up for herself and other employees of her medical practice. The Secretary of Labor brought this civil enforcement action alleging that both defendants had breached their fiduciary duties under ERISA. The district court granted summary judgment in favor of the Secretary and entered a permanent injunction against defendants removing them as fiduciaries. *Walsh v. Sherrod*, No. 16-cv-04825, 2022 WL 971857 (N.D. Ill. Mar. 31, 2022). Both defendants have appealed.

We affirm. The undisputed facts show that both defendants breached their fiduciary duties of loyalty and prudence under ERISA. Hundreds of thousands of dollars of plan assets were used for defendant Sherrod's personal benefit but were accounted for as plan expenses or losses rather than as distributions of retirement benefits to her. The permanent injunction was well within the scope of reasonable responses to the breaches.

I.  *Facts for Summary Judgment & Procedural History*

Defendant Sherrod owned and ran an ophthalmology practice (Shirley T. Sherrod, M.D., P.C.) in Detroit, Michigan. In 1987, she established a defined-benefit retirement plan for the practice's employees, including herself. She named herself as trustee of the retirement plan, which is governed by ERISA. In 2008, the employment of all employees other than Dr. Sherrod herself was terminated, and sometime around then, she sold the practice to another physician. In April 2010, the plan was amended to make Sherrod responsible for: (1) investing,

managing, and controlling plan assets subject to the direction of the employer (herself) or an investment manager; (2) paying benefits to participants at the direction of the administrator; and (3) maintaining records of receipts and disbursements to furnish to the employer or administrator.

The buyer of Dr. Sherrod's practice later sued her in Michigan state court for breach of contract and obtained a judgment against her for $181,000.[1] *Michael S. Sherman, D.O., P.C. v. Shirley T. Sherrod, M.D., P.C.*, Nos. 299045, 299775, 308263, 2013 WL 2360189 (Mich. Ct. App. May 30, 2013). When that judgment went unpaid, the Michigan court prohibited "Shirley T. Sherrod, M.D., and Shirley T. Sherrod, M.D., P.C.," or anyone acting on their behalf "from directly or indirectly selling, transferring, … or otherwise disposing of" any assets "held or hereafter acquired by or becoming due to them."

Around the same time, the buyer garnished Sherrod's assets at Merrill Lynch, where her personal and retirement accounts, her company's account, and the plan's account were kept. See *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601, 602 (7th Cir. 2013). Acting as a custodian of plan assets, Merrill Lynch read the Michigan court's order to require it to freeze all assets due to Sherrod, including distributions from the plan account. *Id.* at 603. But Merrill Lynch said it was prepared to follow any instructions from the plan administrator to make distributions to other plan participants. *Id.*

Sherrod appealed the money judgment against her. The Michigan Court of Appeals allowed the appeal and a stay of

---

[1] For simplicity's sake, all dollar figures in this opinion are rounded to the nearest hundred.

the judgment on the condition that Sherrod either appear for a creditor's examination or post a $250,000 cash or surety bond. Sherrod chose to post the bond. *Walsh*, 2022 WL 971857, at *2. In November 2011, she signed an affidavit directing Merrill Lynch to make two distributions from the Plan: one for $250,000 to secure the bond and another for $3,000 to cover costs associated with filing the bond. Her affidavit also "confirmed that the requested distributions did not exceed her individual interest" in the Plan. *Id.* Merrill Lynch made those requested payments from plan assets to cover the bond, apparently with the blessing of the Michigan court.

In May 2012, Sherrod appointed Johnson as plan administrator. In that role, Johnson's "primary responsibility" was "to administer the Plan for the exclusive benefit" of plan participants and "in accordance with [plan] terms." Toward that end, Johnson was "to maintain all necessary records for the administration of the Plan," as well as "a record of all actions taken … and other data that may be necessary for proper administration of the Plan." He was also "responsible for supplying all information and reports to the Internal Revenue Service, Department of Labor, Participants, Beneficiaries and others as required by law" and for authorizing and directing the trustee "with respect to all discretionary or otherwise directed disbursements from the Trust." After Johnson became plan administrator, Sherrod filed a required form with the Department of Labor reporting no benefit distributions and no expenses in 2011, but reporting a $246,300 "loss" to the plan.

The Michigan court eventually lifted the freeze on Sherrod's assets. She then started directing payments to herself out of plan funds. Sherrod had reached retirement age under the plan in 2011, but many of the payments to her were treated

Case: 1:16-cv-04825 Document #: 350 Filed: 05/10/23 Page 5 of 19 PageID #:4480
Case: 22-2205    Document: 54    Filed: 05/10/2023    Pages: 19

Nos. 22-2204 & 22-2205 5

as plan expenses rather than as distributions of her retirement benefits. In addition to the $250,000 bond payment that she had directed in 2011, Sherrod pulled at least $50,000 from the plan in 2013, $286,900 in 2014, $120,000 in 2015, $196,400 in 2016, and $173,800 in 2017. In 2014, Sherrod and Johnson reported $57,000 in benefit distributions and $142,000 in expenses. In 2015, $59,000 in distributions and $40,000 in expenses. In 2016, $62,500 in distributions and $133,900 in expenses. In 2017, about $69,700 in distributions and $104,100 in expenses. The plan account had been closed to deposits since 2008, and no deposits were made into the plan from 2014 to 2017.

Under ERISA section 502(a)(2), codified as 29 U.S.C. § 1132(a)(2), the Secretary of Labor brought this civil enforcement action against Sherrod and Johnson in April 2016, while Sherrod was still making payments to herself and Johnson was plan administrator. The Secretary's complaint alleged both past and ongoing violations of defendants' fiduciary duties. The complaint asked the court to remove Sherrod and Johnson from their positions of trust, to enjoin them permanently from serving as fiduciaries for ERISA-covered plans, and to appoint an independent fiduciary to administer and terminate the plan.

Defendants filed their answer raising three affirmative defenses, including ERISA's statute of limitations, alleging that any failure to administer benefits for terminated employees according to the plan occurred no later than the sale of Sherrod's practice in 2008. About four months later, in December 2016, defendants sought leave to amend their answer to elaborate on the statute of limitations defense with respect to claims concerning the use of plan assets to post a bond in the

Case: 1:16-cv-04825 Document #: 350 Filed: 05/10/23 Page 6 of 19 PageID #:4481
Case: 22-2205     Document: 54     Filed: 05/10/2023     Pages: 19

6                                                                    Nos. 22-2204 & 22-2205

Michigan lawsuit against Sherrod. The proposed amendment would have alleged that the Secretary had actual knowledge in 2012 that plan assets had been used for that purpose. The district court (the late Judge Milton I. Shadur) denied the motion. Although the district court said it rejected the Secretary's argument that the amendment would be futile, the court noted that defendants had been dilatory and that the amendment lacked evidentiary support.

The case was later assigned to Judge Wood, and the Secretary moved for summary judgment. The district court found no genuine dispute of fact material to whether Johnson and Sherrod had repeatedly violated their duties of care and loyalty and their duty to administer according to plan documents. *Walsh*, 2022 WL 971857, at *4–9. Because these violations had harmed the plan, the court granted summary judgment for the Secretary, *id.* at *7, *9, as well as all requested injunctive relief.

The court removed defendants as plan fiduciaries and permanently enjoined them from serving or acting as fiduciaries or service providers with respect to any employee benefit plans subject to ERISA. The court also appointed an independent fiduciary to terminate the plan and to issue distributions to eligible participants and beneficiaries. The fiduciary was given the power to review and allocate appropriately all previous distributions and transactions for the plan, including the 2011 bond payment and all payments to Sherrod and her attorneys, and all other payments or withdrawals from the plan that were not paid directly to a

Case: 1:16-cv-04825 Document #: 350 Filed: 05/10/23 Page 7 of 19 PageID #:4482
Case: 22-2205    Document: 54    Filed: 05/10/2023    Pages: 19

Nos. 22-2204 & 22-2205 7

participant other than Sherrod from 2013 to present. Both defendants have appealed.[2]

II. *Analysis*

A. *Legal Standard*

We review de novo a district court's grant of summary judgment, giving defendants, as the non-moving parties in this case, the benefit of conflicting evidence and drawing reasonable inferences in defendants' favor. *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 462 (7th Cir. 2010). To prevail on a claim for breach of fiduciary duty under ERISA, the plaintiff must prove: (1) that the defendant is a plan fiduciary; (2) that the defendant breached his or her fiduciary duty; and (3) that the breach resulted in harm to the plaintiff. *Id.* at 464. Defendants agree that they were plan fiduciaries, and the undisputed facts show both breach and harm.

B. *Breaches of the Duty to Follow Plan Documents*

To a degree unusual in the law, ERISA focuses on following written plan documents, regardless of other evidence. ERISA requires fiduciaries to "discharge [their] duties … in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). As relevant here, the plan required Sherrod to pay benefits "at the direction of the Administrator," and to "maintain records of receipts and disbursements." Johnson was required "to authorize and direct"

---

[2] We asked at oral argument why the Secretary has not yet pursued any restitutionary relief against defendants under 29 U.S.C. § 1109. The answer may be that, in reviewing and allocating previous distributions and transactions, the independent fiduciary may be able to take further action affecting Sherrod's personal benefits. Regardless, the district court's permanent injunction is appealable under 28 U.S.C. § 1292(a).

Sherrod "with respect to all discretionary or otherwise directed disbursements" and to maintain records "of all actions taken."

Defendants do not dispute that Sherrod often acted at her own direction and not "at the direction of the Administrator," unilaterally withdrawing funds from the plan without consulting Johnson. Accordingly, there is also no dispute that Johnson did not "authorize and direct" those payments as required by the plan. In effect, Sherrod gave herself the keys to the bank vault, and Johnson let her use them. On these undisputed facts, defendants violated their duty to act "in accordance with the documents and instruments governing" the plan. 29 U.S.C. § 1104(a)(1)(D).[3]

Johnson's attempts to avoid this conclusion are not persuasive. He says that he prudently hired an actuary to prepare annual reports, that he and Sherrod "met frequently to discuss the Plan's bills and to try to minimize expenses," that he never "attempted to conceal" Sherrod's conduct, and that he "found her to be an honest person" who could be taken "at her word." None of these points creates a genuine dispute on

---

[3] The Secretary also alleged that defendants failed to maintain records properly as required by the plan. Sherrod argues that she could not have violated ERISA on this basis because "ERISA does not … mandate any specific recordkeeping arrangement at all." See *Divane v. Northwestern Univ.*, 953 F.3d 980, 990 (7th Cir. 2020), vacated on other grounds by *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 740 (2022). That is true, but the plan still required *some* kind of recordkeeping. We need not reach the recordkeeping question, however. Sherrod's failure to seek Johnson's authorization and direction and Johnson's concomitant failure to fulfil his responsibilities are sufficient to demonstrate breaches of § 1104(a)(1)(D).

Nos. 22-2204 & 22-2205                                             9

the core issue—whether Johnson failed to "authorize and direct" Sherrod's withdrawals.

For her part, Sherrod argues that she was required to follow Johnson's direction only when he gave it, so she could not have violated plan documents by acting on her own. But such an understanding is contrary to the plan's language (the "Trustee will" make distributions "as directed by the Administrator") and would render all but meaningless the administrator's fiduciary role.

C. *Breaches of the Duties of Care & Loyalty*

"ERISA's duty of loyalty is the 'highest known to the law.'" *Halperin v. Richards*, 7 F.4th 534, 546 (7th Cir. 2021), quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982). The duty "protects beneficiaries by barring any conflict of interest that might put the fiduciary in a position to engage in self-serving behavior at the expense of beneficiaries." *Id.* ERISA's primary command to fiduciaries, in section 404, is therefore to "discharge [their] duties … solely in the interest of the participants and beneficiaries and … for the exclusive purpose of … providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). Fiduciary self-dealing is therefore prohibited "[e]xcept as provided in section 1108 of this title." 29 U.S.C. § 1106(a)(1)(D) (fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect … transfer to, or use by or for the benefit of a party in interest," including the fiduciary, 29 U.S.C. § 1002(14)(A), "of any assets of the plan"); *Leigh v. Engle*, 727 F.2d 113, 123 (7th Cir. 1984) (§ 1106 "prohibits transactions where those dealing with the plan may have conflicting interests which could lead to self-dealing").

1. *The Bond Payment*

In the district court, Sherrod did not dispute that she used plan funds to make the bond payment in her state-court appeal. She argued there that the payment was a reasonable expense authorized by the plan. *Walsh*, 2022 WL 971857, at *5. On appeal, Sherrod did not make this "reasonable litigation expense" argument until her reply brief, so that argument is waived. See *Foster v. PNC Bank, N.A.*, 52 F.4th 315, 319 n.2 (7th Cir. 2022) (arguments not addressed in opening brief on appeal are waived).

Instead, Sherrod argues on appeal that she paid the plan back for the bond payment. But the only evidence of payment she offers is a 2014 letter from Johnson's attorneys to a bond agency asking that the bond payment be returned to the plan. The suggestion that a *request* for payment should be sufficient proof that the requested payment was *actually made* seems to invite the court to enter unknown legal territory. If a quarter of a million dollars had actually been paid back into the plan, we would expect that the plan fiduciaries would have at least some record of the payment.

More fundamental, though, even if Sherrod had actually later reimbursed the plan for that quarter of a million dollars she had taken for her personal purposes and charged as a plan expense, that would not be a defense on the merits of the breach of fiduciary duty. Drawing on plan funds to obtain a bond in litigation that had little or nothing to do with the plan was itself a violation of Sherrod's fiduciary duties. An embezzler does not avoid criminal liability by returning the stolen money, whether the theft has been discovered yet or not. Similarly here, Sherrod could not absolve herself of her fiduciary

breach by returning the funds three years after they were wrongfully taken from the plan.

Johnson raises a separate point regarding the bond payment. The district court wrote that Johnson, who was supposed to be overseeing the plan's funds, breached his fiduciary duties "by allowing Dr. Sherrod to make such a withdrawal on her own initiative." *Walsh*, 2022 WL 971857, at *6. That statement was not accurate. The record shows that Sherrod directed Merrill Lynch to make the bond payment in November 2011, but Johnson did not become plan administrator until May 2012. Johnson makes much of this factual error, but it was harmless.

Although Johnson was not plan administrator at the time of the bond payment, once he did become administrator, he became "responsible for supplying all information and reports" to the Department of Labor. While Johnson was plan administrator, defendants reported no benefit distributions and no expenses for 2011—the year of the bond payment. They did report a $246,300 "loss" to the Plan. It is therefore not decisive that Johnson was not plan administrator at the time of the improper bond payment.

Nor does it matter that Johnson hired an actuary to prepare the forms filed with the Department of Labor and did not, himself, sign the 2011 form reporting the bond payment as a "loss." As plan administrator, Johnson was responsible for the reporting, both under plan documents and under ERISA. See 29 U.S.C. § 1021(b) ("Duty of disclosure and reporting").

Sherrod and Johnson therefore both violated their fiduciary duties with respect to the bond payment—Sherrod in

directing the payment and Johnson in falsely reporting it as a loss. And even if we thought that Johnson had a potentially viable defense based on his limited role in the payment for the bond, the rest of his breaches of fiduciary duty would still, as discussed below, call for the remedies the district court ordered.

   2.  *Distributions After the Freeze Was Lifted*

Once the Michigan court in May 2013 lifted the freeze on Sherrod's assets, including plan distributions to her, Sherrod began directing payments to herself out of plan assets. From 2013 to 2017, Sherrod withdrew close to $825,000 from the Plan in 123 transactions.

In the district court, Sherrod argued that many of those payments were reimbursements for necessary and reasonable plan expenses, that she was entitled to any benefits she did receive as a plan participant, and that the Secretary bore the burden of establishing any violations. *Walsh*, 2022 WL 971857, at *7. The district court agreed that the burden was on the Secretary but found that the undisputed evidence showed that Sherrod had directed hundreds of thousands of dollars to be paid to herself out of plan funds. That was sufficient, said the district court, to prove that Sherrod had "put her own interests above those of Plan participants and beneficiaries in violation of § 404(a)(1)(A)" and had violated § 406(a)(1)(D)'s prohibition on self-dealing. *Id.*, citing ERISA sections codified as 29 U.S.C. §§ 1104 & 1106. In the district court's view, by establishing such self-dealing, the Secretary had shifted the burden back to the defendants to show that the transactions were "actually permissible under ERISA." *Id.*, citing *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 676 (7th Cir. 2016).

Nos. 22-2204 & 22-2205     13

On appeal, Sherrod has abandoned several arguments she made in the district court. She no longer argues that some of the payments were made to reimburse her for plan legal expenses she had covered out of her own funds. Nor does she argue that some of the payments went to plan expenses and to other plan beneficiaries.

Instead, Sherrod argues that any allegations of violations after plan year 2014 should be disregarded on the theory that "the particularized allegations" of the Secretary's complaint were limited to plan years 2012 to 2014. But the Secretary's 2016 complaint alleged continuing violations from "January 1, 2015 to the present." That was sufficient to put defendants on notice that ongoing violations were part of the case. Even if we were to accept this argument, it would not help Sherrod. She has not argued, let alone raised a dispute of fact, in this appeal that the payments from 2012 to 2014 were proper. Those payments alone are enough to establish violations of ERISA sections 404(a)(1)(A) and 406(a)(1)(D), codified in 29 U.S.C. §§ 1104 & 1106.

Still, both Sherrod and Johnson argue that the burden is on the Secretary to prove violations and not on them to show that payments were permissible. We disagree. Section 406(a) applies broad prohibitions on payments to fiduciaries subject to section 408. In the most relevant portion, section 406(a) provides: "Except as provided in section [408]: (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect … (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan …." In turn, section 408(b) enumerates categories and conditions for transactions exempted from the prohibitions of

section 406. Further, section 408(c) provides that section 406 shall not be construed to prohibit a fiduciary from receiving benefits she may be entitled to as a plan participant or beneficiary or reasonable compensation for services rendered to the plan. 29 U.S.C. § 1108(c). As we said in *Allen*, though, "an ERISA plaintiff need not plead the absence of exemptions to prohibited transactions. It is the defendant who bears the burden of proving" that a section 408 exemption applies. 835 F.3d at 676. A fiduciary seeking the protection of section 408 has the burden of pleading and ultimately proving that an exception applies to a transaction otherwise prohibited by section 406. The district court correctly shifted the burden to defendants.

Defendants did not carry that burden. They produced 70 pages of "postal money orders, invoices, and communications with counsel regarding attorneys' fees," but they failed to offer "an accounting of these documents" or to match them up with Sherrod's withdrawals from the plan. *Walsh*, 2022 WL 971857, at *8. It is neither the district court's nor this Court's job to piece together an argument for Sherrod and Johnson. *Id.*, citing *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument.").

D.  *Harm to the Plan*

Once it is established that fiduciaries have breached their duties, the plaintiff must show harm to the plan. See *Kenseth*, 610 F.3d at 464. Defendants argue that the district court erred when—in spite of the 2014 letter from Johnson's attorney asking that the payment be returned to the plan—the court inferred that there was "no indication in the record … that the Plan ever received" those funds and concluded that the bond

Case: 1:16-cv-04825 Document #: 350 Filed: 05/10/23 Page 15 of 19 PageID #:4490
Case: 22-2205      Document: 54           Filed: 05/10/2023      Pages: 19

Nos. 22-2204 & 22-2205 15

payment was therefore a loss to the plan. *Walsh*, 2022 WL 971857, at *7 & n.6. The district court's treatment of that issue was exactly right. Also, undisputed evidence shows that the plan suffered harm from at least a significant portion of the more than 100 subsequent payments Sherrod made to herself from plan assets from 2012 to 2017.

### E. *Denial of Motions to Amend*

Both defendants argue on appeal that the district court abused its discretion by denying defendants leave to amend their original answer to add a statute of limitations defense. Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to amend "when justice so requires," but "a district court may deny leave to amend for undue delay, bad faith, dilatory motive, prejudice, or futility." *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997).

The presumptive limitation period for violations of ERISA is six years from the date of the last action constituting part of the breach or violation. *Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 674 (7th Cir. 2014); 29 U.S.C. § 1113(1). The period is shortened to just three years from the time the plaintiff gained "*actual knowledge* of the breach or violation." *Fish*, 749 F.3d at 674, quoting 29 U.S.C. § 1113(2) (emphasis added).

Four months after they filed their answer, defendants sought leave to amend to add an affirmative defense regarding the bond transaction in 2011 based on ERISA's three-year limitations period. They claimed that two documents they had discovered in their own files suggested that the Secretary's claims with respect to the bond payment were time-barred. The documents showed nothing of the sort.

One was a fax from the plan's lawyer to the Department of Labor, dated December 20, 2012, notifying the Department that Johnson had succeeded Sherrod as plan administrator and that a notice of appeal had been filed in a federal case brought by Sherrod and Johnson against Merrill Lynch. See *Johnson v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 12-cv-2545, 2012 WL 5989345 (N.D. Ill. Nov. 28, 2012). The second document was an email from Sherrod to the Department of Labor, dated August 10, 2012, asking about the alienation of plan assets by the Michigan state court.

In March 2017, District Judge Shadur denied the motion, finding that defendants had been dilatory in pursuing the amendment and had, regardless, put forth no evidence that could meet the statute's "actual knowledge" requirement. Aside from questions of law, which we review de novo, our review of a district court's denial of leave to amend is for an abuse of discretion. *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 868 (7th Cir. 2013). We find no abuse of discretion in the district court's decision.

First, the district court did not err by finding that defendants had been dilatory in pursuing this affirmative defense. The supposedly new documents had been in defendants' possession from the start, so an affirmative defense based on them "could have been pled at any time after the filing of the initial complaint." See *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (affirming denial of amendment where facts "must have been known to defendants").

More important, though, the documents defendants relied upon fell far short of hinting, let alone proving, that the Secretary actually learned of the defendants' violations. The three-year statute of limitations applies only when the

Case: 1:16-cv-04825 Document #: 350 Filed: 05/10/23 Page 17 of 19 PageID #:4492
Case: 22-2205   Document: 54   Filed: 05/10/2023   Pages: 19

Nos. 22-2204 & 22-2205                                          17

plaintiff has actual knowledge of a violation, not when the plaintiff arguably should have known of a violation.

Defendants' theory seems to be that the Secretary should have realized that Sherrod had breached her fiduciary duties by posting the bond with plan assets because (a) the fax referred to the federal lawsuit between defendants and Merrill Lynch, and (b) if the Secretary had investigated and obtained documents filed in that suit, then the Secretary would or could or should have known of her breach. The August 2012 email, defendants argued, likewise should have put the Secretary on notice because a letter attached to that email described how Sherrod had signed an affidavit stating that plan assets would be used to post the bond.

We agree with the district court that defendants' effort to "cobble together" from these two documents a showing of actual knowledge that would trigger the three-year statute of limitations did not warrant a late amendment of the answer, or at least the district court did not abuse its discretion in denying the amendment. The passing references in these documents to the lawsuits did not give the Secretary actual notice of defendants' self-dealing and neglect. At best, those documents *might* have prompted the Secretary "to engage in active outside research" that *might* have revealed Sherrod's breach of her fiduciary duties. That theory would have been a stretch to establish constructive ("should have known") knowledge. It certainly falls far short of actual knowledge.

The district court accurately explained that defendants were trying to apply the concept of inquiry notice to "the far more demanding 'actual knowledge' test under ERISA." The court's analysis was prescient. Three years after the district court denied defendants' motion to amend, the Supreme

Court heard a case where the plaintiff had received far more explicit disclosures of the ERISA breaches, not just indications that might warrant an investigation. The Court held that, to meet ERISA's actual knowledge requirement, there must be "more than evidence of disclosure alone." *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 774–75, 777 (2020). Rather, "the plaintiff must in fact have become aware" of the disclosed information showing the violation. *Id.* In reaching this holding, the Court addressed some of the same circuit decisions that the district court did here.[4]

In sum, even if defendants' supposedly newly discovered documents had actually disclosed a violation, which they did not, there is no evidence or reason to think that the Secretary was "in fact … aware" of that disclosure. In the wake of *Intel*, establishing actual knowledge on such paltry evidence would be impossible, and it is now clear that any amendment would have been futile. The denial of leave to amend was not a reversible error.

F. *Injunctive Relief*

Finally, both defendants argue that even if we agree with the district court on the merits, the court granted excessive equitable relief. We review a district court's grant of injunctive relief for an abuse of discretion. *Harrell ex rel. NLRB v. American Red Cross*, 714 F.3d 553, 556 (7th Cir. 2013).

While Johnson asks that we reverse the judgment of the district court and remand for a trial, he makes no specific argument that the district court abused its discretion in granting

---

[4] See *Intel*, 140 S. Ct. at 775 n.3, citing, e.g., *Caputo v. Pfizer, Inc.*, 267 F.3d 181 (2d Cir. 2001), and *Gluck v. Unisys Corp.*, 960 F.2d 1168 (3d Cir. 1992).

the relief that it did. For her part, Sherrod argues that she should not have been removed as plan trustee. She says that she faced extraordinary circumstances, that the plan's assets were enmeshed in a state lawsuit, that she "reached out to the Secretary for help," that she used the services of experts and even "made efforts to secure the return of the bond funds." In other words, Sherrod argues that, at the time she made the bond payment, she thought she was doing "everything reasonable to protect" the plan from the Michigan litigation.

Even if we give Sherrod the benefit of her assertions of good faith, since the district court imposed the injunction based on a summary judgment decision, good faith is not a defense for one breach of a fiduciary duty, let alone the repeated breaches shown here. See *Halperin*, 7 F.4th at 546, citing *Leigh*, 727 F.2d at 124. In any event, the undisputed facts show that a significant portion of Sherrod's many later payments to Sherrod herself from plan assets from 2012 to 2017 were prohibited self-dealing. As with harm to the plan, those payments, taken alone, amply support the district court's decision to remove defendants as fiduciaries and to prohibit them from again serving in such positions of trust. Given the gravity and frequency of defendants' breaches of their fiduciary duties, they are fortunate that the relief against them has thus far been relatively modest. The district court's grant of summary judgment and its permanent injunction are

AFFIRMED.